## BELFRY COAL CORPORATION, Appellant,

v.

## EAST KENTUCKY BEVERAGE COMPANY, Appellee.

Court of Appeals of Kentucky.

Oct. 19, 1956.

F. Dale Burke, Burke & Burke, Pikeville, for appellant.

Hobson & Scott, Pikeville, for appellee.

MOREMEN, Judge.

This is an appeal from a judgment which denied appellant, Belfry Coal Corporation, injunctive relief and damages under KRS 365.020. The language of this statute is involved but, when paraphrased to meet the facts of this instant case, it means:

No person who distributes a product of general use, shall discriminate between different communities or any portion thereof with intent to destroy the competition of any dealer in such community, by selling the merchandise at a lower rate in one community than in another.

This section is a part of the so-called Fair Trade Practice Act of this state. It has been said that the purpose of the law against unfair competition is to protect the competitive position of business enterprise. These rules of competition guarantee the maintenance of competitive order. We are compelled to recognize that nearly all competitors try to eliminate their rivals in their struggle to conduct a profitable business. The statutes seem to attempt to suppress that impulse.

■ The terms "fair trade" or "unfair competition" seem to be but a convenient synonym for combining a legal standard with certain ethical values that are not always an integral part of every rule of law because at times the law does not concern itself with theological or metaphysical implications. It is often not concerned with motive or state of mind and is directed primarily at behavior regardless of the thoughts in the mind of the person who performs the acts. In short, if a man acts right according to our rules, it matters not, in most cases, what he thinks. We are usually concerned with the result and not the stimulus. The law, however, does on certain occasions concern itself with intent, and when we enter this abstract field we are often armed only with our well used measures of behavior. Also, we observe that usually these fair trade statutes are aimed at conditions where one man is attempting to eliminate another who is in his same competitive field. However, KRS 365.020, and particularly that part which is paraphrased above, seems to indicate that aggression need not be directed toward an actual competitor in the same field, it protects persons against any one whom the

seller of the commodity—whatever the reason—might wish to hurt. The statute seems to be directed mainly at price cutting, rebates, and other devices which might aid in driving a competitor out of business to the extent that it is even prohibited that a person sell at less than cost if the purpose is to injure competitors, KRS 365.030. In fact, the whole purpose of fair trade acts, with this one exception, seems to be directed at prohibiting cutting prices rather than raising them. However, we are concerned with the exception, which requires a statement of facts.

Appellant operates a retail grocery store in the Tug River area of Pike County. Appellee, East Kentucky Beverage Company, operates a soft drink manufacturing plant at Pikeville and distributes and sells its products throughout Pike County and about twelve other counties. It also has a plant at Hazard.

The business of manufacturing and selling soft drinks is highly competitive and although each drink has a trade name, competition seems to exist regardless of the coloring or flavor of the commodity.

In Pike County, appellee, East Kentucky Beverage Company, had competition from several sources, the Pikeville Coca-Cola Bottling Company of Pikeville, the Williamson Coca-Cola Bottling Company and the Sanitary Bottling Company of Williamson, West Virginia.

The general manager of appellee company testified that the wholesale price of 96¢ to $1 per case would give a reasonable profit to his company. Prior to June 1953, the local distributors were selling it at a lower price, but at that time, the price was increased and this condition lasted until December 31, 1953, when the Pikeville Coca-Cola Bottling Company notified its customers and competitors that it was reducing its price to 80¢ per case. The appellee company, which distributes Seven Up, Orange Crush and Pepsi-Cola reduced the price of its bottled goods to meet the

80¢ per case wholesale price. It was testified that appellee' company at that time was dissatisfied but was unable to charge more because of competition. However, on the 18th day of April 1955, the Williamson Coca-Cola Bottling Company and the Sanitary. Bottling Company, who were servicing a portion of Pike County which lies on the watershed of Tug River, raised their price from 80¢ to 96¢ per case and, simultaneously, appellee also raised its price to dealers in the Tug River area to 96¢ per case, but continued the price of 80¢ per case to the remaining part of Pike County.

Appellant complained that this action was discriminatory and in violation of KRS 365.020, and filed suit for the relief above mentioned.

The trial court was of opinion that the discrimination was not made with the intention to destroy competition of appellant and other merchants located in other portions of the county and lacked an essential element necessary before the terms of the statute may be invoked.

We are in accord with that opinion. We do not believe it was the intention, of the statute to penalize distributors in cases where mala fides is not involved, and we can find not even a trace of that here. The appellee, as we understand this record, had lowered the price to the entire county merely for the purpose of meeting competition. When his competitors increased their price, he gladly accepted for his own benefit a price which would return to him a reasonable profit for his labors, but the action was not directed at injuring a customer. The record fails to disclose, even in the slightest degree, ill feeling or ill intentions toward appellant and is lacking, we believe, the gravamen of the offense, i. e., the intention to destroy the competition of his dealer.

The trial court pointed out in his opinion that not only would loss of profit to the dealer be very small, but also that the natural barriers between the Tug River area and the rest of the county would tend to deny that any competition by the dealer would be destroyed.

The judgment is therefore affirmed.